309 So.2d 370 (1975)
Charles T. WEAVER, Plaintiff-Appellee,
v.
MID-AMERICA DISTRIBUTING CORPORATION, Defendant-Appellant.
No. 12515.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1975.
Rehearing Denied April 1, 1975.
Cook, Clark, Egan, Yancey & King, by Gordon E. Rountree, Shreveport, for defendant-appellant.
Hamilton & Sermons, by Gayle K. Hamilton, Shreveport, for plaintiff-appellee.
Before AYRES, BOLIN and PRICE, JJ.
En Banc. Rehearing Denied April 1, 1975.
*371 BOLIN, Judge.
Charles T. Weaver sued Mid-America Distributing Corporation contending he was entitled to damages against defendant for the breach of a written employment contract entered into between Weaver and Mid-America. The contract provided plaintiff was to be paid a weekly salary of $300 plus two percent of the monthly gross profits. In his petition Weaver alleged that at the time the contract was breached by defendant, plaintiff was entitled to $3600 for 12 weeks salary, plus $600 as vacation pay and two percent of the gross profits for a period from June 1, 1972 to September 10, 1973. Defendant contended plaintiff breached the contract and therefore was entitled to no recovery.
Following a lengthy trial the lower court, for written reasons, rendered judgment in favor of plaintiff against defendant for $3600 for the three months salary, plus $1788.31 for the two percent gross profits, but denied the claim for vacation pay.
It has been stipulated that if plaintiff is entitled to recovery, the sum of $1788.31, representing two percent of the gross profits, is the correct amount for that item. Since plaintiff has neither appealed nor answered, the rejection of his claim of $600 for vacation pay is no longer at issue. For reasons hereinafter expressed we affirm the holding of the lower court.
The overriding question on appeal is one of fact and that is whether the employee or employer breached the contract of employment.
The employment contract, dated May 8, 1972, is in notarial form signed by plaintiff and Hall S. Morehead, president of defendant corporation. The contract provides in part as follows:
"Employer hereby employs Employee as a General Manager and Employee agrees, during the term of this agreement, to devote the whole of his working time to the business of Employer, and use his best endeavors to promote its business and welfare.
"The term for which this contract is made is for the period beginning the first day of June, 1972, and ending on the thirty-first day of May, 1973, and to be extended as hereinafter provided."
* * * * * *
"... with the provision that either party can withdraw from the contract by giving the other party at least sixty (60) days' written notice of termination. In the event of such termination by Employer, however, Employer will be obliged to pay Employee his salary (being earned at that time) for the next three months counting from the date of such notification, plus any accrued vacation time, sick pay, etc., to which he is entitled...."
It is conceded no written notice was given by either party.
Approximately one month after plaintiff and defendant had entered into the employment contract defendant became aware that sales continued to decrease. There is serious dispute as to the reason for this condition but on August 30, 1973 defendant prepared and submitted to plaintiff for his consideration two written documents, one entitled "A Memorandum" and the other addressed "To Whom it May Concern". The memorandum became effective on August 30, 1973, and radically altered the original contract of employment dated May 8, 1972. Among other things the memorandum eliminated the provision for weekly compensation for the general manager and reduced the commission to be received by plaintiff to one percent of total sales. The instrument addressed "To Whom it May Concern" was an offer to sell the subsidiary of defendant corporation under stated conditions.
Plaintiff's version of the difficulty which finally caused him to sever his relationship *372 with defendant and ultimately to institute this law suit, is basically as follows: Plaintiff testified he was employed with another company in Atlanta, Georgia, when he was contacted by a representative of defendant corporation and invited to come to Shreveport and discuss the possibility of becoming the manager of defendant's business in the Shreveport area. After some discussions with defendant's area manager the written contract of employment was executed by plaintiff and the president of defendant corporation.
Plaintiff, who commenced his duties as general manager on June 1, 1971, stated defendant's business, which consisted principally of the sale and distribution of water well drilling equipment, plastic pipe and related materials, was in bad condition. This was due primarily to defendant's reputation for being "slow" in paying its bills, which in turn resulted in the customers not being expeditiously serviced. Plaintiff also said Morehead, who was president of defendant company, was also the manager of two swimming pool companies and that sales of equipment to those companies were principally paper transactions, allowing only ten percent profit to defendant. Plaintiff and others testified that Weaver did all he possibly could to build up the business but that he was finally faced with the alternatives reflected in the two documents dated August 30, 1973, which in effect meant plaintiff would be forced to either take a reduction in pay and fringe benefits which he enjoyed under the original contract, or purchase the company under the terms of the instrument addressed "To Whom it May Concern". Plaintiff and others candidly testified that an effort was made by plaintiff to secure the necessary financing to buy the business. In connection with this preparation some of the original customers of defendant corporation were contacted. However, after it became evidence plaintiff would be unable to meet either of the alternatives, he notified defendant, whereupon Morehead told him he could turn in all the keys and leave.
Defendant's witnesses contend the situation was quite different from the version given by plaintiff. Defendant contends, and several witnesses so testified, that plaintiff never fulfilled the conditions of the contract of employment, particularly that portion of the contract requiring the employee "to devote the whole of his working time to the business of employer, and to use his best endeavors to promote its business and welfare." It is defendant's position that plaintiff began undermining his employer almost immediately after he assumed the position of general manager. In this connection some witnesses testified that plaintiff made an effort to lure defendant's customers to plaintiff with the promise that a separate company would be formed in competition with defendant.
It is difficult to reconcile the contentions of plaintiff and defendant as well as the testimony of many of the witnesses. We have carefully studied the record and, while we realize the case presents an extremely close factual question, we find ourselves in agreement with the conclusion of the trial judge. After reciting the salient facts he found:
"... Under these facts this Court finds that Mr. Weaver did not voluntarily leave his employment but the actions of Mr. Morehead amounted to terminating the services of Mr. Weaver.
"The Court likewise listened carefully to all the evidence introduced in this case with reference to whether or not Mr. Weaver violated the terms of his employment contract or the procedures of the company together with actions with customers which were detrimental to the defendant.
"After having considered all the evidence I am unable to conclude that any actions were taken by Mr. Weaver while working for defendant that either violated his contract or were detrimental to defendant, except actions dictated by the circumstances. One of the circumstances *373 was that the corporation was short of cash which brought about many difficulties in receiving supplies. Some previous employees had quit before Mr. Weaver came to work and started a competing business. Mr. Morehead had earlier offered to sell the business to Mr. Weaver and Mr. Weaver had attempted to secure his line of credit and line of materials to sell. It appears that Mr. Weaver's efforts did not extend unduly beyond what would be required to investigate these possibilities in order to determine if a purchase was possible."
For the foregoing reasons the judgment is affirmed at defendant's cost.